NOTICE
Decision filed 08/11/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 250228

NO. 5-25-0228

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| AMY McKINNEY, Individually and as Personal Representative of the Estate of William Steeves, Deceased, | ) ) ) | Appeal from the Circuit Court of Madison County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 23-LA-22 |
| | ) | |
| A.W. CHESTERTON COMPANY; BRAND INSULATIONS, INC.; CROWN CORK & SEAL COMPANY, INC.; FOSTER WHEELER ENERGY CORPORATION; HERCULES, LLC; INDUSTRIAL HOLDINGS CORPORATION, f/k/a The Carborundum Company; JOHN CRANE, INC.; MORSE TEC LLC, f/k/a BorgWarner Morse Tec LLC and Successor-by-Merger to Borg-Warner Corporation; PARAMOUNT GLOBAL, f/k/a ViacomCBS Inc., f/k/a CBS Corporation, a Pennsylvania Corporation, f/k/a Westinghouse Electric Corporation; PNEUMO ABEX LLC, Successor-in-Interest to Abex Corporation, f/k/a Pneumo Abex Corporation; REDCO CPRPORATION, f/k/a Crane Co.; RILEY POWER, INC.; and UNION CARBIDE CORPORATION, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants | ) | |
| | ) | Honorable |
| (Kelli Kamm, Heir of the Deceased, Interested Person, and True Party In Interest-Appellant). | ) ) | Andrew Carruthers, Judge, presiding. |

_____

PRESIDING JUSTICE CATES delivered the judgment of the court, with opinion.
Justices McHaney and Sholar concurred in the judgment and opinion.

**OPINION**

1

¶ 1    The appellant, Kelli Kamm, appeals the circuit court's decision finding that Illinois law, rather than Alabama law, applies to the distribution of settlement proceeds in this wrongful death action and the denial of her motion to reconsider the choice-of-law decision. Kamm also argues that the circuit court erred in denying and striking her motion for leave to amend the first amended complaint. For the following reasons, we affirm.

¶ 2                                I. BACKGROUND

¶ 3    On January 9, 2023, William Steeves, by his attorneys, Simmons Hanly Conroy (Simmons), filed a two-count complaint in Madison County, Illinois, alleging negligence and willful and wanton misconduct by multiple defendants, after Steeves was diagnosed with mesothelioma from alleged exposure to asbestos. The complaint included allegations that his mesothelioma was caused by exposure to asbestos products "at various locations throughout the United States" when he was employed as an engineer from 1959 to 1981. During that time, Steeves worked with materials, products, and equipment that exposed Steeves to asbestos and asbestos fibers. Steeves additionally pleaded nonoccupational exposure to asbestos during the time period of 1959 to 1977. Steeves lived and worked in Florida from 1959 to 1981. He moved to Alabama in 1982.

¶ 4    Steeves was an Alabama resident when the lawsuit was filed in Illinois, and he remained in Alabama until the time of his death. The complaint addressed general jurisdiction and alleged that each of the defendants were registered to do business in Illinois, maintained a physical presence in Illinois, and conducted operations in Illinois. One of the defendants, John Crane, Inc., was an Illinois corporation, organized and existing in Illinois and was doing business in Madison County, Illinois. Steeves additionally addressed specific jurisdiction and claimed that Illinois jurisdiction was proper where "a portion of the acts, omissions and events leading to and giving

2

rise to Decedent's exposure to each [of] Defendant's asbestos-containing materials/products occurred in and/or through Illinois."

¶ 5    Steeves died on May 10, 2023, and had two surviving daughters, Amy McKinney and Kelli Kamm. McKinney lived in Alabama, near Steeves, and Kamm lived in Florida. In his last will and testament, dated July 9, 2020, Steeves left the entirety of his estate, real and personal property, to McKinney and left nothing to Kamm.

¶ 6    "Letters Testamentary" were issued by the probate court in Jefferson County, Alabama, appointing McKinney as the personal representative of Steeves's estate. Subsequently, on October 18, 2023, McKinney filed a first amended complaint in the pending asbestos case in Madison County, Illinois. The first amended complaint included claims pursuant to two Illinois acts: the Survival Act (755 ILCS 5/27-6 (West 2022)) and the Wrongful Death Act (740 ILCS 180/0.01 *et seq.* (West 2022)). The damages sought pursuant to the Survival Act included reimbursement for medical bills, pain and suffering incurred prior to Steeves's death, and the loss of enjoyment of a normal life. In the Wrongful Death Act claims, the plaintiff sought to recover damages based on Steeves's loss of "society, guidance, advice and support" and claimed that the family of Steves suffered "grief, mental anguish and emotional distress." Mandatory mediation was ordered, settlement agreements[1] were entered into between the parties, and settlement funds were held in escrow by Simmons in Alton, Illinois.

¶ 7    On August 23, 2024, McKinney filed a limited appearance and motion to distribute and allocate the proceeds realized from the settlement monies. The record reveals that the settlements allocated some of the recovery under the Survival Act (the pre-death funds) and other funds were

---

[1]The record does not include the written settlement agreements or the specific details for any of the settlement agreements. The appellant has included settlement documents in the appellant's appendix, which are the subject of appellee's motion to strike.

3

allocated, generally, pursuant to the Wrongful Death Act (the post-death funds). Notice was given to Kamm, who entered her appearance and subsequently filed a memorandum of law regarding choice-of-law for the distribution of the Wrongful Death Act proceeds. Kamm argued that the post-death funds should be distributed under Alabama law. She did not address the Survival Act claims and the distribution of the pre-death proceeds. Kamm explained that if Alabama law were to be applied, the settlement proceeds under the Alabama wrongful death statute (Ala. Code § 6-5-410 (1975)) would be distributed to Steeves's heirs as if he died without a will. Under the Alabama statute regarding allocation, Kamm and McKinney would divide the wrongful death proceeds equally. See Ala. Code § 43-8-42 (1975). In comparison, under the Wrongful Death Act (740 ILCS 180/2(b) (West 2022)), Kamm argued that the wrongful death proceeds would be distributed based on a "percentage of dependency" to the next of kin. Therefore, Kamm acknowledged that if Illinois law applied, McKinney would receive "most" of the post-death funds.

¶ 8 Kamm set forth the applicable law governing choice-of-law rules, stating the forum court applies the choice-of-law rules of its own state, subject to any constitutional limitations. Kamm relied on *Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147 (2007), and claimed that, for choice-of-law purposes, the Restatement (Second) of Conflict of Laws § 146 (1971) applied. Kamm further acknowledged that pursuant to the Restatement, the rights and liabilities for a particular issue should be governed by the jurisdiction with the most significant relationship to the occurrence and the parties.

¶ 9 Kamm argued that Alabama law should apply because the "injury" occurred in Alabama, arguing that Steeves's death was the injury. Additionally, Steeves lived in Alabama when he was first diagnosed with an asbestos-related disease, he received treatment in Alabama, and Steeves's

4

estate was being probated in Alabama. Kamm claimed that the parties did not have a more significant relationship with Illinois than with Alabama in the wrongful death case.

¶ 10    Kamm provided an affidavit averring that she was Steeves's daughter and she resided in Florida. From 1982 until May 10, 2023, Steeves was an Alabama resident. To the best of Kamm's knowledge, Steeves never lived in Illinois. When Steeves lived in Alabama, he began experiencing symptoms of asbestos exposure, he received his diagnosis and treatment in Alabama, and he died from an asbestos-related disease in Alabama. Additionally, Steeves's estate was probated in Alabama.

¶ 11    McKinney filed a memorandum claiming Illinois law applied, which preliminarily noted that Steeves selected Illinois as the forum for the underlying lawsuit before he died. The claims litigated thus far were based on injuries due to asbestos exposure between 1959 to 1981 and that the settlement funds being held in Illinois were for pre-1980 asbestos exposure. During the time of the alleged asbestos exposure, Steeves did not live or work in Alabama. Rather, he lived and worked in Florida, Tennessee, and Kentucky. Therefore, as to the pre-death proceeds, there was no conflict of law issue raised by Kamm.

¶ 12    McKinney thus indicated that the sole issue before the court was what state law should apply to the distribution of the post-death proceeds. McKinney agreed with Kamm that where a conflict exists in tort law, the Restatement (Second) of Conflict of Laws § 145 (1971), provided that the law of the state with "the most significant relationship to the occurrence and the parties" should be applied. McKinney argued, however, that that Illinois had the most significant relationship to the occurrence and the parties when considering the policies under section 6 of the Restatement. Restatement (Second) of Conflict of Laws § 6 (1971). The lawsuit included claims under the Survival Act (755 ILCS 5/27-6 (West 2022)) and the Wrongful Death Act (740 ILCS

5

180/0.01 *et seq.* (West 2022)). The settlement proceeds were recovered under those Illinois statutes, and no claims were asserted under Alabama's wrongful death statute or any other Alabama law.

¶ 13 Furthermore, McKinney argued that the amended complaint alleged that "a portion of the act, omissions and events leading to and giving rise to Plaintiff's exposure to each Defendant's asbestos-containing materials/products *occurred in and/or through Illinois*, including, but not limited to: the manufacture, fabrication, assembly, and/or production of asbestos-containing materials/products or components thereof to which Plaintiff was exposed." (Emphasis in original.) McKinney additionally argued that the domicile, residence, place of incorporation, or place of business of the parties are not considered to be a significant factor where recovery already had been obtained.

¶ 14 McKinney provided an affidavit averring that, to her knowledge, Steeves and Kamm had no contact for the 15 years prior to Steeves's death and that they were estranged for a longer period of time before stopping all communication. McKinney, on the other hand, lived within walking distance of where Steeves resided and saw him almost daily. McKinney accompanied Steeves to all of his medical appointments while he was battling mesothelioma.

¶ 15 On December 3, 2024, the circuit court held a hearing regarding the choice-of-law determination for the distribution of the Wrongful Death Act settlement proceeds. Kamm argued that Illinois law applied to the choice-of-law issue and that Illinois used the Restatement (Second) of Conflict of Laws to determine which State had the most significant relationship with the occurrence and the parties. Kamm claimed, "the Restatement says that where the wrongful death or the occurrence occurred, in this case, the death—that state—there's a very strong legal presumption that the laws of that state apply." Because Steeves was domiciled in Alabama for over

6

40 years, the "strong legal presumption becomes even stronger." Steeves never lived or worked in Illinois. The only relationship Steeves had with Illinois was that the asbestos case was filed in Illinois. Therefore, Kamm claimed that Alabama law should be applied to the distribution of the wrongful death proceeds.

¶ 16    In response, McKinney argued that Illinois law should apply and relied on the case of *In re Estate of Barnes*, 133 Ill. App. 3d 361 (1985). In *Estate of Barnes*, McKinney explained, the death occurred in Michigan, and the claim was made that Illinois law should apply. The appellate court went through the Restatement (Second) of Conflict of Laws analysis and addressed the fact that the settlement had been obtained pursuant to Michigan law, which was a compensatory statute. The court held that under the circumstances, Michigan law should apply.

¶ 17    Similarly, McKinney pointed out that Illinois's Wrongful Death Act also allowed for compensatory damages. Specifically, the next of kin of the decedent were allowed to seek compensatory damages for "loss of companionship, loss of guidance, loss of society, advice, love, [and] financial assistance." McKinney claimed that the purpose of the Alabama wrongful death statute (Ala. Code § 6-5-410 (1975)) was punitive in nature, and not compensatory. The distribution provision in Illinois under the Wrongful Death Act was based on proportionate dependency where damages are distributed according to loss. Alabama distributed wrongful death proceeds according to a statutory scheme without regard to the loss suffered by the particular heir. Therefore, McKinney argued it would be inequitable to use Illinois law to obtain damages for the next of kin, and then distribute the post-death proceeds under Alabama law, without regard to the dependency of the next of kin to the decedent, as anticipated under the Wrongful Death Act. Further, because the Restatement required consideration of any state law that may have an interest in the distribution, McKinney even addressed the distribution of proceeds under the Florida

7

Wrongful Death Act (Fla. Stat. §§ 768.16-768.26 (2022)), as Kamm lived in Florida. Damages under Florida law were also compensatory in nature, similar to Illinois law, thus, Florida law would favor distribution using Illinois law

¶ 18    McKinney argued that where Steeves lived, died, and where he was injured were not relevant facts because the recovery of monetary damages was determined based upon Illinois law, and under Illinois law, the focus was on the heirs, not the estate. No claims had been asserted under Alabama law. McKinney responded to Kamm's assertion that under the Restatement (Second) of Conflict of Laws § 146 (1971), there was a presumption that Alabama law applied. McKinney argued, however, that the conflict of law issue before the court was related solely to the distribution of wrongful death proceeds and not the personal injury suffered by Steeves. McKinney contended that sections 146 and 145 of the Restatement, as well as section 6, all included language that some other state may have a more significant relationship based upon the particular issue under consideration. Restatement (Second) of Conflict of Laws §§ 6, 145, 146 (1971). McKinney also argued that section 146 was not applicable, as the issue before the court was not whether Alabama law applied to the injury, but how the settlement proceeds should be distributed. McKinney claimed it would be inequitable to recover post-death proceeds under Illinois's Wrongful Death Act and have Alabama law apply to the distribution.

¶ 19    Kamm's response was in agreement that the choice-of-law issue only related to the distribution of the Wrongful Death Act settlement proceeds and agreed that the pre-death proceeds recovered pursuant to Illinois's Survival Act were not an issue. Kamm maintained that Alabama law should apply to the distribution of the wrongful death proceeds where the parties did not have a more significant relationship with Illinois than Alabama under section 145 of the Restatement. Restatement (Second) of Conflict of Laws § 145 (1971). Finally, Kamm argued that by using

8

Alabama's distribution law, there would be no need to have a "lengthy type of evidentiary hearing on relationship and dependency." The distribution under Alabama law was "nice and simple," and divided the wrongful death proceeds "50/50."

¶ 20   The circuit court initially took the matter under advisement and subsequently entered an extensive written order on December 13, 2024. In its order, the question framed by the circuit court was "which state's law should apply to the distribution of Illinois wrongful death proceeds." The circuit court, after conducting a choice of law analysis, found that the post-death proceeds should be distributed pursuant to Illinois law. First, the circuit court considered that, as the forum state, Illinois applied the Restatement (Second) of Conflict of Laws to determine the applicable law for distribution of the post-death proceeds. The circuit court then addressed the considerations in section 145 of the Restatement and noted that this section instructs that "where a conflict exists in tort law, the Restatement's general principle is that the law of the state, which with respect to the particular issue, has the most significant relationship to the occurrence and the parties should be applied." Restatement (Second) of Conflict of Laws § 145 (1971). The circuit court's order went on to evaluate each of the contacts to be taken into account to determine the law applicable to an issue, which include: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." Restatement (Second) of Conflict of Laws § 145(2) (1971). The circuit court rejected Kamm's argument that the presumptive rule in section 146 of the Restatement (Restatement (Second) of Conflict of Laws § 146 (1971)) should apply to wrongful death actions, but reasoned that, even if this section was considered, Illinois law would apply.

9

¶ 21    In its order, the circuit court also analyzed the relevant section 6 principles of the Restatement, which included the relevant policies of the forum, the relevant policies of other interested states, the protection of justified expectations, and the ease in the determination and application of the law to be applied. Restatement (Second) of Conflict of Laws § 6 (1971). Generally, the circuit court considered that the wrongful death claims were asserted under Illinois law, the settlement was reached in Illinois, and the recovery was obtained from settlements under Illinois substantive law, which used compensatory damage calculations under its wrongful death statute. Furthermore, the circuit court found that applying Alabama's method of distribution to the monies recovered pursuant to Illinois's compensatory Wrongful Death Act, would be "inequitable, inconsistent, and contrary to Illinois public policy." The circuit court held that "the wrongful death proceeds (currently held and any recovered in the future) shall be distributed pursuant to Illinois law."

¶ 22    On December 20, 2024, Kamm moved to amend the first amended complaint to include allegations of probable exposure to asbestos when Steeves lived and worked in Alabama. Kamm argued that the defendants "were national (perhaps international) corporations who had performed acts of tortious conduct in many states, including Alabama." McKinney objected to Kamm's motion for leave to amend the first amended complaint and argued that Kamm was not a party to the litigation and did not have the right to request leave to amend the complaint. Simmons, as counsel for the estate, additionally filed a motion to strike Kamm's motion for leave to amend.

¶ 23    On December 31, 2024, Kamm additionally filed a motion to reconsider the circuit court's December 13, 2024, order regarding the choice-of-law determination and argued that the circuit court erred by not finding that Alabama law applied to the distribution of the wrongful death settlement proceeds. Kamm argued that section 175 of the Restatement addressed wrongful death

10

actions and contained the same language as section 146 that was erroneously rejected by the circuit court. Restatement (Second) of Conflict of Laws §§ 146, 175 (1971). Kamm set forth the language of section 175, which stated,

> "In an action for wrongful death, the local law of the state where the injury occurred determines the rights and liabilities of the parties *unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied*." (Emphasis added.) Restatement (Second) of Conflict of Laws § 175 (1971).

¶ 24 McKinney submitted a response supporting the circuit court's decision to apply Illinois law. McKinney also argued that Kamm raised the issue applying section 175 of the Restatement (Restatement (Second) of Conflict of Laws § 175 (1971)) for the first time in her motion for reconsideration, which should not be allowed. McKinney argued that Illinois law should apply because Illinois had a more significant relationship than Alabama with respect to the particular issue, which was the distribution of settlement monies recovered pursuant to the Wrongful Death Act.

¶ 25 The circuit court held a hearing on February 18, 2025, and addressed the various motions that were pending, including the motion to reconsider. At the beginning of the hearing, counsel for McKinney informed the circuit court that net pre-death settlement proceeds were being held by Simmons in the amount of $70,509.55, and there was an additional $431,646.50 in post-death settlement proceeds. The circuit court reviewed the settlement documents *in camera*, without objection. These documents are not included in the record on appeal. After the various motions were argued, the circuit court proceeded to an evidentiary hearing on the allocation of the post-death settlement proceeds realized pursuant to the Wrongful Death Act. Testimony was presented

11

by McKinney, Kamm, and their mother, Joy Balsavage, who testified to McKinney's close relationship with Steeves and on the lack of a relationship between Kamm and Steeves from 1997 until Steeves died.

¶ 26    After testimony concluded, the parties presented closing arguments. McKinney requested that the $70,509.55 be allocated to the Survival Act claims, which would be payable to the estate. McKinney then asked that all of the post-death settlement monies be allocated pursuant to the Wrongful Death Act claims. McKinney argued that the Wrongful Death Act compares the percentage of dependency that each heir had with the decedent, which is determined by the circuit court. Because Kamm had testified that she had no relationship with Steeves after 1997 and McKinney visited with Steeves on a daily basis and cared for him while he was ill, McKinney sought 100% of the post-death proceeds.

¶ 27    Kamm then indicated her agreement that the amount to be allocated pursuant to the Survival Act claims should be $70,509.55. She argued that the remaining proceeds, recovered pursuant to the Wrongful Death Act, should be allocated according to the dependency of the next of kin as outlined by the Wrongful Death Act. Kamm argued that Steeves's death damaged Kamm because she lost her father and the ability to reconcile their relationship. She requested a "small percentage" of the post-death proceeds and left the exact percentage to the circuit court's discretion.

¶ 28    On February 26, 2025, the circuit court entered a written order denying Kamm's motion to reconsider the choice-of-law decision. The circuit court found that Kamm had not raised "[s]ection 175 of the Restatement (Second) of Conflict of Laws" in a timely manner, as she did not reference this section in her prior choice-of-law argument. The court further held, however, that even had Kamm raised the issue, "the place of injury presumption in Restatement Section 175 has been

12

overcome," and, in consideration of the particular issue before the court, "Illinois has a more significant relationship than Alabama under the principles stated in Restatement Section 6 in light of Restatement Section 145 contacts." The circuit court concluded that the Wrongful Death Act settlement proceeds "shall be distributed pursuant to Illinois law."

¶ 29 The circuit court also found that "certain settlements" had been entered into prior to Steeves's death, and an accounting of the post-death settlements recovered as of the date of the allocation hearing had been provided to McKinney and Kamm. The circuit court indicated it had reviewed the agreements and releases *in camera* and determined that the net settlement amount for "Pre-Death Settlements" was $70,509.55. The circuit court additionally found that,

> "[McKinney] and [Kamm] *agreed* to the following allocation: Pre-Death Settlements to the Survival Action and payable to Decedent's estate and all settlements entered into after Decedent's death (the 'Post-Death Settlements') to the Wrongful Death Action and payable to Decedent's next of kin in the percentages determined herein. The issue before the Court is determining the percentages of the Post-Death Settlements to be distributed to [McKinney] and [Kamm] in accordance with the Wrongful Death Act." (Emphasis added.)[2]

¶ 30 The circuit court's order allocated the pre-death settlements in the net amount of $70,509.55 to the Survival Act claims, which were payable to the decedent's estate. The circuit court then applied section 2(a) of the Wrongful Death Act (740 ILCS 180/2(a) (West 2022)) to allocate the post-death settlements payable to the next of kin in accordance with their relative degree of dependency. The circuit court found that Kamm was permanently estranged from

---

[2]The circuit court referenced an agreement between the parties regarding the wrongful death proceeds. However, there is nothing in the record to support that an agreement had been made by the parties prior to the final order.

13

Steeves in 1996 or 1997, and there were no communications between Kamm and Steeves after 2007. McKinney, on the other hand, remained in contact with Steeves throughout his life and Steeves moved into a townhouse on the same street as McKinney's home. McKinney visited with Steeves daily and accompanied him to his medical appointments, treatments, and procedures. Based on the testimony and evidence presented during the dependency/allocation hearing, the circuit court allocated 100% of the post-death settlement proceeds to McKinney and 0% to Kamm. Additionally, Kamm's motion for leave to amend the first amended complaint was denied, and the circuit court granted the motion to strike filed by the estate.

¶ 31     Kamm filed a notice of appeal on March 18, 2025, challenging the circuit court's choice-of-law determination made on December 13, 2024, the denial of the motion to reconsider entered on February 19, 2025, and the portion of the February 26, 2025, decision that applied Illinois law instead of Alabama law to the allocation of the Wrongful Death Act proceeds. Kamm subsequently submitted a motion pursuant to Illinois Supreme Rule 323(a) (eff. July 1, 2017) and requested that "a certain transcript not be included in the report of the proceedings." The motion stated that "Kamm is *not* appealing the Court's determination of the allocation of Wrongful Death proceeds between Kamm and McKinney. Kamm is appealing, *inter alia*, the application of Illinois law to the distribution of the wrongful death proceeds." (Emphasis in original.) Kamm indicated that "the portion of the February 18, 2025, hearing dealing with evidence and testimony regarding such allocation" ("the Irrelevant Portion") has absolutely no bearing on Kamm's appeal and requested that "the Irrelevant Portion" be excluded from the record. The circuit court denied Kamm's Rule 323(a) motion.

¶ 32                                    II. ANALYSIS

¶ 33    On appeal, Kamm argues that the circuit court erred by applying Illinois law, rather than Alabama law, to the method of distribution of the Wrongful Death Act post-death settlement proceeds. We note that the record reveals there were some settlement discussions prior to the entry of the February 26, 2025, order, which held that Illinois law applied to the distribution of the pre-death proceeds under the Survival Act. The order also allocated the percentages of the post-death proceeds from the Wrongful Death Act. Specifically, the February 26, 2025, order stated the following:

> "[McKinney] and [Kamm] agreed to the following allocation: Pre-Death Settlements to the Survival Action and payable to Decedent's estate and all settlements entered into after Decedent's death (the 'Post-Death Settlements') to the Wrongful Death Action and payable to Decedent's next of kin in the percentages determined herein. The issue before the Court is determining the percentages of the Post-Death Settlements to be distributed to [McKinney] and [Kamm] in accordance with the Wrongful Death Act."

¶ 34    Based on the language of the circuit court's February 26, 2025, order, Kamm agreed to proceed with Illinois law, at least as it pertained to the proceeds recovered under the Survival Act, and with regard to the percentages allocated to the next of kin pursuant to the Wrongful Death Act. Indeed, Kamm filed a motion pursuant to Illinois Supreme Court Rule 323(a) (eff. July 1, 2017), wherein she indicated to the circuit court that she was "not appealing the Court's determination of the allocation of Wrongful Death proceeds between Kamm and McKinney." In light of these agreements, Kamm's first contention on appeal is whether the circuit court erred in applying the

15

Illinois Wrongful Death Act, as opposed to Alabama law, for the distribution of the wrongful death proceeds.[3]

¶ 35    Our supreme court has emphasized that, "a choice-of-law analysis begins by isolating the issue and defining the conflict," and "[a] choice-of-law determination is required only when a difference in law will make a difference in the outcome. *Townsend*, 227 Ill. 2d at 155. A circuit court's choice-of-law determination is reviewed *de novo*. *Townsend*, 227 Ill. 2d at 153.

¶ 36    Under Alabama law, damage proceeds recovered pursuant to the Alabama wrongful death statute are not part of the decedent's estate. *Kirksey v. Johnson*, 166 So. 3d 633, 645 (Ala. 2014). Damages recovered in an Alabama wrongful death action "are not subject to the payment of the debts or liabilities of the testator or intestate, but must be distributed according to the statute of distributions." Ala. Code § 6-5-410(c) (1975). Damages awarded pursuant to the Alabama wrongful death act are distributed as if the decedent had died intestate. *Swiney v. Waters*, 716 So. 2d 702, 704 (Ala. Civ. App. 1998). Intestate succession is specifically provided for by Alabama law (Ala. Code § 43-8-40 *et seq.* (1975)) and because Steeves died without a spouse, his children inherit the proceeds in equal parts. Ala. Code § 43-8-42 (1975). The Alabama Supreme Court has clearly held that the "laws of descent and distributions are of *statutory creation*, and...the status of parent and child has always influenced legislative action in determining what shall become of the property of those who die intestate." (Emphasis in original and internal quotation marks omitted.) *Ellis v. West*, 971 So. 2d 20, 22 (Ala. 2007). In addition, "[i]f the language of the statute is unambiguous, then *there is no room for judicial construction* and the clearly expressed intent of the legislature must be given effect." (Emphasis in original and internal quotation marks omitted.)

_____

[3]As previously represented by Kamm's attorney at the hearing on February 18, 2025, and reflected in the language of the circuit court's February 26, 2025, order, Kamm agreed to proceed with Illinois law as it pertained to the distribution of proceeds recovered pursuant to the Survival Act claims.

*Ellis*, 971 So. 2d at 22. Thus, the public policy of Alabama, for the distribution of proceeds pursuant to the laws of intestate succession, has been declared by the legislature and the courts to apply the plain and unambiguous language of the statute. "The wisdom or folly of that declaration is of no legitimate concern to the judiciary. [Citation.] The judiciary's duty is merely to enforce the policy as declared ***." *Ellis*, 971 So. 2d at 22-23. Thus, the settlement proceeds realized by Steeves's heirs under the Alabama wrongful death act would be divided 50% to McKinney and 50% to Kamm.

¶ 37    The method of distribution and allocation of proceeds recovered under Illinois's Wrongful Death Act is very different than the distribution under the Alabama wrongful death statute. Unlike Alabama law, the distribution in Illinois is based on the next of kin's percentage of dependency on the decedent at the time of death, as determined by the circuit court in Illinois. See 740 ILCS 180/2(b) (West 2022). The purpose of the Wrongful Death Act is to provide designated survivors with the benefits that " 'would have been received from the continued life of the decedent.' " *Johnson v. Provena St. Therese Medical Center*, 334 Ill. App. 3d 581, 592 (2002) (quoting *Elliott v. Willis*, 92 Ill. 2d 530, 540 (1982)). "[D]amages recoverable for wrongful death are set with reference to the pecuniary loss suffered by the surviving family members as a result of the death." *Estate of Barnes*, 133 Ill. App. 3d at 365. Therefore, damages are distributed to "the beneficiaries based upon their economic dependence on the deceased, thereby resulting in an equitable distribution reflecting the damages each beneficiary suffered." *Estate of Barnes*, 133 Ill. App. 3d at 365. Damages received under the Wrongful Death Act are not included in the deceased's estate. *Estate of Barnes*, 133 Ill. App. 3d at 365.

¶ 38    Here, McKinney and Kamm, the surviving heirs of Steeves, would presumably split the wrongful death proceeds equally under Alabama law. See Ala. Code § 43-8-42 (1975). Under

17

Illinois law, the circuit court determined that McKinney was entitled to receive the entirety of the proceeds because of her close relationship with Steeves. See 740 ILCS 180/2 (West 2022). Kamm did not receive a percentage allocation, as she was estranged from her father for many years. Accordingly, there is a substantive difference between the wrongful death statutes of Illinois and Alabama, which affects how the settlement proceeds are distributed, thus requiring a choice-of-law determination. The circuit court applied the Wrongful Death Act to the distribution of the settlement proceeds in Steeves's litigation. The question raised now for our consideration is whether the circuit court erred in applying Illinois law to the distribution of the post-death proceeds received as a result of litigation pursuant to the Wrongful Death Act.

¶ 39    In the choice-of-law analysis, "the forum court applies the choice-of-law rules of its own state." *Townsend*, 227 Ill. 2d at 155. The initial complaint was filed in Illinois by Steeves before his death and subsequently amended by McKinney, the personal representative of Steeves's estate, to include the Survival Act and Wrongful Death Act claims. Thus, Illinois's choice-of-law rules apply to this Illinois action.

¶ 40    In making choice-of-law decisions, Illinois follows the Restatement (Second) of Conflict of Laws. *Fernandez v. Motorola Solutions, Inc.*, 2024 IL App (1st) 220884, ¶ 73. Restatement (Second) of Conflict of Laws § 175 (1971) is applicable in wrongful death actions, and states,

> "In an action for wrongful death, the local law of the state where the injury occurred determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied."

18

¶ 41    Kamm argues that there is a strong presumption that Alabama law should apply in a wrongful death action based on section 175 of the Restatement, where the injury referred to is Steeves's death, which occurred in Alabama.[4] McKinney, on the other hand, argues that section 175 is applicable to actions to recover damages for the wrongful death, but not applicable to the distribution of the proceeds. Specifically, McKinney points to comment (c) of section 175, which states, "The rule of this Section applies to all actions to recover for a death that is claimed to have been tortiously caused." Restatement (Second) of Conflict of Laws § 175 cmt. c (1971). Alternatively, McKinney argues that even if section 175 does apply, the circuit court was correct that Illinois law applied to the distribution of the post-death settlement proceeds. Because we review this conflict of laws *de novo* and because section 175 and section 146 are analyzed alike, we consider these sections in tandem in order to answer the question of which state law applies to the distribution of the Wrongful Death Act settlement proceeds.

¶ 42    We begin our exploration of the Restatement with section 175 which sets forth a specific, *albeit*, preliminary, choice-of-law rule that states,

> "Right of Action for Death.
>
>     In an action for wrongful death, the local law of the state where the injury occurred determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied." Restatement (Second) of Conflict of Laws § 175 (1971).

---

[4]During the hearing on this issue, Kamm argued that section 146 was the applicable section to consider for the choice-of-law analysis. She renews these arguments on appeal.

Similarly, section 146 applies to tort injuries, and contains the identical language as in section 175. With regard to injuries caused by tortious misconduct, our supreme court has observed that, "[s]ection 146 is the starting point for any choice-of-law analysis in personal injury claims." (Internal quotation marks omitted.) *Townsend*, 227 Ill. 2d at 164. Restatement (Second) of Conflict of Laws § 146 (1971) states:

> "In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied."

¶ 43     Both section 146 and section 175 provide there is a presumption that "the local law of the state where the injury occurred determines the rights and liabilities of the parties." Restatement (Second) of Conflict of Laws §§ 146, 175 (1971). This presumption "may be overcome only by showing a *more* or *greater* significant relationship to another state." (Emphases in original.) *Townsend*, 227 Ill. 2d at 163. These sections of the Restatement are referred to by our supreme court as "presumptive rules." *Townsend*, 227 Ill. 2d at 164.

¶ 44     In addition to the presumptive rules, the Restatement also contains a set of general sections, such as section 6 and section 145, which are less selective and embody "a free-form approach to choice of law." *Townsend*, 227 Ill. 2d at 162.

> "Thus, the Second Restatement of Conflict of Laws has been described as 'schizophrenic,' in that one portion of its split personality consists of general sections such as sections 6 and 145, while the other portion is a set of reasonably definite rules and a preference for

20

territorial solutions, including the injury-state rule for tort cases ***." *Townsend*, 227 Ill. 2d at 162.

¶ 45 Restatement (Second) of Conflict of Laws § 6 (1971) applies general principles for a choice-of-law analysis to all causes of action and is incorporated by reference in both section 146 and section 175. *Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill. 2d 45, 61 (2007); see Restatement (Second) of Conflict of Laws §§ 146, 175 (1971). Our supreme court has stated that, "[s]ection 6 is the cornerstone of the entire Restatement." (Internal quotation marks omitted.) *Townsend*, 227 Ill. 2d at 158-59. The choice-of-law principles under section 6 are stated as follows:

"(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied." Restatement (Second) of Conflict of Laws § 6 (1971).

¶ 46 Section 6 assists the choice-of-law analysis in determining whether "some other state has a more significant relationship under the principles stated in section 6 to the occurrence and the

21

parties." Restatement (Second) of Conflict of Laws §§ 146, 175 (1971). Our supreme court has

observed, that, "[w]hile section 6 enunciates the guiding principles of the choice-of-law process,

the most-significant-relationship formula describes the *objective* of that process: to apply the law

of the state that, with regard to the particular issue, has the most significant relationship with the

parties and the dispute." (Emphasis in original and internal quotation marks omitted.) *Townsend*,

227 Ill. 2d at 159-60.

¶ 47    Similarly, section 145(2) "provides a list of the factual contacts or connecting factors that

the forum court should consider in choosing the applicable law." *Townsend*, 227 Ill. 2d at 160.

Restatement (Second) of Conflict of Laws § 145(2) (1971) provides as follows:

> "Contacts to be taken into account in applying the principles of § 6 to determine the law
>
> applicable to an issue include:
>
>> (a) the place where the injury occurred,
>>
>> (b) the place where the conduct causing the injury occurred,
>>
>> (c) the domicil, residence, nationality, place of incorporation and
>
> place of business of the parties, and
>
>> (d) the place where the relationship, if any, between the parties is
>
> centered.
>
> These contacts are to be evaluated according to their relative importance
>
> with respect to the particular issue."

In *Townsend*, the Illinois Supreme Court explained that, when applying the principles of section 6

to the contacts set forth in section 145 to determine the state with the most significant relationship,

"the forum court should consider the relevant policies of all potentially interested states and the

22

relevant interests of those states in the decision of the particular issue." *Townsend*, 227 Ill. 2d at 160.

¶ 48 In summary, then, "the Second Restatement contemplates a two-step process in which the court (1) chooses a presumptively applicable law under the appropriate jurisdiction-selecting rule, and (2) tests this choice against the principles of §6 in light of relevant contacts identified by general provisions like §145 (torts)." (Internal quotation marks omitted.) *Townsend*, 227 Ill. 2d at 164. An example of this analysis is illustrated in *Estate of Barnes*, 133 Ill. App. 3d 361, where the First District addressed the distribution of proceeds from a wrongful death action pursued and settled under the Michigan wrongful death statute (Mich. Comp. Laws Ann. § 600.2922 (West 2005)). *Estate of Barnes*, 133 Ill. App. 3d at 362. In *Barnes*, the spouse of the deceased opened a probate estate in Illinois, where she lived, and where she was appointed as the administrator. She requested that the settlement proceeds from the Michigan wrongful death action be distributed under Illinois law. *Estate of Barnes*, 133 Ill. App. 3d at 363-64.

¶ 49 The appellate court in *Estate of Barnes* considered that

"sections 6 and 145 of the Restatement are construed together as requiring an examination of the relevant policies of the forum, the relevant policies of other interested States and the basic policies underlying the particular field of law in order to determine whether a contact has any significance for choice of law purposes." *Estate of Barnes*, 133 Ill. App. 3d at 367.

Thus, the court concluded that

"where a recovery has been obtained under the Michigan Wrongful Death Act which reflects the Michigan law of damages with its emphasis on lost companionship, no Illinois policy would be furthered by applying Illinois law to the distribution of the proceeds,

23

regardless of the fact that all the beneficiaries are Illinois domiciliaries." *Estate of Barnes*, 133 Ill. App. 3d at 369.

The appellate court in *Estate of Barnes*, further determined that,

"Michigan has the only significant contacts with the dispute here. The suit was originally brought in Michigan under Michigan law, was ultimately settled in Michigan and the recovery obtained reflects the Michigan law of damages, not Illinois'. Michigan's interest in the distribution of proceeds recovered under its wrongful-death statute is evidenced by the provisions in its statute regulating this matter and the underlying policies which would be furthered through their application to the present case, namely, the equitable distribution of the proceeds in a manner consistent with each beneficiary's loss. Accordingly, we find that Michigan has the most significant contacts with this dispute and Michigan law should control the distribution." *Estate of Barnes*, 133 Ill. App. 3d at 369.

¶ 50    This case involving the asbestos exposure of William Steeves, which ultimately caused his death, is similar to the *Estate of Barnes* in that the recovery of the settlement proceeds was obtained under Illinois law, and the "particular issue" is the distribution of the settlement proceeds to the beneficiaries. See *Estate of Barnes*, 133 Ill. App. 3d at 368. The section 146 injury for which this cause of action was originally filed was related to Steeves's exposure to asbestos which occurred between 1959 to 1981. Multiple defendants were named, each of which allegedly was negligent in the sale, manufacture, production, and/or promotion of asbestos-containing products. Further, the complaint alleged that a portion of the acts, omissions and events leading to and giving rise to Steeves's exposure to each of the defendant's asbestos-containing materials/ products occurred in and/or through Illinois. There is no mention of exposure in Alabama.

24

¶ 51    As a result of the asbestos exposure, Steeves suffered from mesothelioma, which ultimately caused his death. After Steeves's death, the first amended complaint was filed by McKinney, as the personal representative of Steeves's estate. This amended complaint pled claims pursuant to the Survival Act and Wrongful Death Act. Therefore, section 175 was implicated, and the question raised was whether the injury was determined to be the place of death, which was Alabama, or the alleged place of exposure, a part of which occurred in Illinois. The presumptive rule defining place of injury is more complex in this case than other tort claims because the alleged exposure occurred over a period of time, while Steeves was traveling across multiple states. During the alleged exposure period between 1959 to 1981, Steeves did not live or work in Alabama. No claims were alleged under Alabama law by Steeves when he was living or included in the first amended complaint by McKinney, as the personal representative of Steeves's estate. Therefore, regardless of whether the choice-of-law analysis in this case is considered under section 146 or section 175, we find that the presumptive place of injury is Illinois, as there is a specific allegation of exposure during the relevant time period.

¶ 52    Having defined the place of injury as Illinois answers only the first question in the choice-of-law analysis. We have only first determined that section 146 and section 175 raise the presumption that the law of the place of injury applies to resolve the conflict-in-law. This presumption, as already discussed, may be rebutted by the more generalized principles of section 6 and section 145. Thus, the second step is to "test[ ] this choice against the principles of §6 in light of relevant contacts identified by general provisions like §145 (torts)." *Townsend*, 227 Ill. 2d at 164.

¶ 53    Considering the most relevant principles in section 6, we find that Illinois also has the most significant relationship with respect to the particular issue, which is the distribution of the

25

settlement proceeds that were realized as a result of the litigation pursued under the Wrongful Death Act (740 ILCS 180/2(b) (West 2024)). The damages sought under the Wrongful Death Act were, in part, based on grief, mental anguish and the emotional distress suffered by Steeves's next of kin who were dependent upon him at the time of his death. The litigation to recover those damages proceeded using the substantive law of the Wrongful Death Act, which produced settlement proceeds. The settlement agreements were negotiated and agreed to based on the claims filed by Steeves in Illinois both prior to his death and after his death. Furthermore, the settlement proceeds are being held in Illinois.

¶ 54    Restatement (Second) of Conflict of Laws § 6 (1971) includes consideration of the relevant policies of the forum and other interested states and the relative interests of those states in the determination of the particular issue. We have already identified the differences in the public policy of distribution of proceeds between Illinois and Alabama. Illinois is a public policy driven state with a distribution methodology aimed at providing for survivors of the decedent who actually suffered the greatest loss. This method of distribution, which is allocated "in the proportion, as determined by the court, that the percentage of dependency of each such person upon the deceased person bears to the sum of the percentages of dependency of all such persons upon the deceased person" furthers the public policy of Illinois. 740 ILCS 180/2(b) (West 2022). Alabama, on the other hand, mechanically applies the distribution statute without regard to the individuals who were dependent upon the decedent. Thus, for proceeds recovered under the Wrongful Death Act, the public policy favors distribution under Illinois law.

¶ 55    Also relevant under section 6 is the protection of justified expectations and the basic policies underlying the particular field of law. Here, Kamm does not object to the allocation of Illinois law. By relying on the substantive law of Illinois, the heirs settled the claims with the

26

expectation that the distribution and allocation of proceeds will be for their benefit. Only the application of Illinois law secures those expectations, as the distribution methodology under the Wrongful Death Act considers the loss suffered by each of the next of kin on a personal level. Alabama law does not consider the compensatory nature of the loss caused by death, as its wrongful death statute is more penal in nature. Damages are divided among the survivors according to a statutory framework as if the decedent died without a will, and the application of that statutory procedure is applied without discretion. Therefore, the expectations of the next of kin are protected by using Illinois law, rather than Alabama law.

¶ 56     Additionally, we take notice of the fact that Kamm does not dispute that Illinois law applies to the Survival Act claims or the settlement proceeds realized as a result of pursuing those claims under Illinois law. Similarly, Kamm agrees that Illinois law should apply to apportion those proceeds realized using the substantive law of the Survival Act, which allows the settlement monies to be paid to the estate. It seems disingenuous for Kamm to acquiesce in allowing Illinois to serve as the State with the most significant relationship to the occurrence and the parties under section 6 when considering the Survival Act and its distribution and then raise the choice-of-law dispute, not for the applicability of the Wrongful Death Act litigation, but only for the narrow purpose of distributing the proceeds. In light of these facts, Illinois has the most significant relationship for choice-of-law purposes.

¶ 57     Finally, we look to section 145 to complete the choice-of-law analysis. We have already determined that the place where the injury occurred was Illinois. The other factors, in this toxic tort case, where the exposure occurred over time, across many states, are not as relevant to our inquiry. Specifically, the place where the conduct causing the injury occurred and the remaining factors, such as domicile, residence, place of incorporation and place of business of the parties,

27

and the place where the relationship, if any, between the parties is centered, are even less important under the circumstances of this case. In summary, we find that the circuit court did not err in its application of Illinois law to the distribution of the Illinois Wrongful Death Act settlement proceeds.

¶ 58     Kamm additionally appeals the circuit court's decision to deny and strike her motion for leave to amend the first amended complaint. "The abuse of discretion standard applies to a circuit court's ruling on a motion to amend pleadings." *Illinois Service Federal Savings & Loan Ass'n of Chicago v. Manley*, 2015 IL App (1st) 143089, ¶ 17. "A wrongful death cause of action must be brought by, and in the name of, the representative or administrator of the decedent's estate, and '*it is this administrator who possesses the sole right of action or control over the suit*.' " (Emphasis in original.) *Cushing v. Greyhound Lines, Inc.*, 2012 IL App (1st) 100768, ¶ 92 (quoting *Will v. Northwestern University*, 378 Ill. App. 3d 280, 289 (2007)). Here, McKinney was the administrator of Steeves's estate, not Kamm. The circuit court did not abuse its discretion in denying Kamm's motion for leave to amend where she had no standing to participate as an individual with control over the litigation.

¶ 59     Finally, we address McKinney's request to strike materials outside of the record included in Kamm's appendix. "If pleadings, exhibits, or other materials are not in the record, they may not be placed before a reviewing court in an appendix. Ill. S. Ct. R. 342 (eff. Oct. 1, 2019) (providing that the appendix to an appellant's brief is limited to pleadings, exhibits, or other materials 'from the record'); [citation]." *Waukegan Hospitality Group, LLC v. Stretch's Sports Bar & Grill Corp.*, 2024 IL 129277, ¶ 20. Here, Kamm's counsel filed an appendix with appellant's brief that contained information not before the trial court, including the unredacted financial accounting of the settlement monies held by Simmons. Submitting documents contrary to the rules as part of the

28

briefing process on appeal is a waste of this court's judicial resources and these extrajudicial documents will not be considered. This practice is looked upon with disfavor. Accordingly, the documents found on pages A4 though A38 of the appellant's appendix, which were not part of the circuit court's record, are stricken.

¶ 60                                     III. CONCLUSION

¶ 61    For the foregoing reasons, we affirm the decision of the circuit court of Madison County.

¶ 62    Affirmed.

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Madison County, No. 23-LA-22; the Hon. Andrew Carruthers, Judge, presiding. |
| **Attorneys for Appellant:** | Hrant "Hud" Norsigian Jr., of Norsigian Law, PLLC, of O'Fallon, and William D. Stiehl Jr., of Mathis, Marifian & Richter, Ltd., of Belleville, for appellant. |
| **Attorneys for Appellee:** | Roy C. Dripps and Michael T. Blotevogel, of Dripps & Blotevogel, LLC, of Maryville, and Michelle L. Rousseau, of Belleville, for appellee. |